UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MALVIA FRECKLETON,

Plaintiff,

v.

MERCY COLLEGE NY, *et al.*,

Defendants.

No. 22-CV-1985 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances</u>:

Malvia Freckleton,
Phildelphia, PA
*Pro Se Plaintiff*

Jeffrey S. Kramer, Esq.
Locke Lord LLP
New York, NY
*Counsel for Defendants*


KENNETH M. KARAS, United States District Judge:

Malvia Freckleton ("Plaintiff") brings this Action against Mercy College NY ("Mercy"),

Susan Moscou ("Moscou"), and Miriam Ford ("Ford") (altogether, "Defendants"), for

discrimination and retaliation on the basis of her race and disability status, fraud, and breach of

contract.  (s*ee generally* Compl. (Dkt. No. 1).)  Before the Court is Defendants' Motion To

Dismiss the claims brought in the Complaint (the "Motion") pursuant to Federal Rule of Civil

Procedure 12(b)(6).  (*See* Dec. in Support of Mot. (Dkt. No. 20).)

For the reasons stated herein, the Motion is granted in part and denied in part.

## I.  Background

### A.  Allegations and Materials Appropriately Considered

As a threshold matter, the Court must determine whether it considers the factual allegations contained in Plaintiff's Opposition.  Plaintiff's Opposition is approximately 180 pages, consisting mostly of attached exhibits, some of which are not legible.  (*See generally* Mem. of Law for Reply to Mot. to Dismiss ("Pl.'s Mem.") (Dkt. No. 23).)  Defendants urge the Court not to consider the additional allegations contained in Plaintiff's Opposition.  (Defs.' Reply Mem. 2.)  However, when reviewing a complaint submitted by a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks and citation omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a defendant's] request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), "documents either in [the plaintiff's] possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotation marks omitted), and "[plaintiff's] opposition memorandum," *Gadson v. Goord*, No. 96-CV-7544, 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997).  Accordingly, the Court considers factual allegations contained in Plaintiff's Opposition and the exhibits attached.

### B.  Factual Background

Plaintiff "was a student in good standing with A's, B's, and one (1) C+ at the College of New Rochelle."  (Pl.'s Mem. 2.)  In 2018, Plaintiff alleges Professor Susan Wilson ("Wilson")

discriminated against her by giving Plaintiff "bad grades so that [she] would not be able to continue and finish [her] BSN nursing degree since 2018." (*Id.* at 4.) Wilson resigned from the College of New Rochelle when Plaintiff "handed a[n] audio recording to [t]he Office of Civil Rights" in December 2018 because Wilson "sabotaged Plaintiff by saying Plaintiff would never pass her NCLEX because [] Wilson had already planned it out to fail" Plaintiff. (*Id.* at 5.)

On February 15, 2019, the College of New Rochelle and Mercy finalized an agreement which allowed College of New Rochelle students in good standing the opportunity to transfer to Mercy for almost all academic disciplines offered by the College of New Rochelle. (*Id.* at 3.) The two colleges have since merged. (*Id.* at 6.) Wilson was hired by Mercy. (*Id.*)

On April 18, 2019, Plaintiff received an acceptance letter from Mercy. (*Id.* at 8.) On July 17, 2019, Plaintiff received a welcome letter from Mercy. (*Id.*) Plaintiff alleges she was "enroll[ed]" at Mercy, had signed a contract, and was scheduled to begin classes in August 2019 at Mercy. (*Id.* at 5, 11.) "On or before July 23, 2019, Plaintiff received a phone call from Mercy [] that Plaintiff is no longer a student." (*Id.* at 8.) She alleges Mercy offered her "acceptance, placement, student application, and financial aid" and that "Plaintiff accepted placement as a Black (African American) student" but Mercy then "unaccepted" her. (*Id.* at 9–10.) Plaintiff's "grades were in good standing and yet Mercy College revoke[d] Plaintiff's admission stating that Plaintiff has poor grades and there was no warning about poor grades." (*Id.* at 10.) Plaintiff alleges there was "no reason for Plaintiff being expelled." (*Id.* at 11.)

On July 23, 2019, Plaintiff met with Moscou and Ford, who work at Mercy College in the Nursing Department. (*Id.* at 8.) During that meeting, Moscou stated "you are not a student at Mercy." (*Id.*) In a transcribed meeting Plaintiff alleges was recorded on August 8, 2019 between Plaintiff, Moscou, and Ford, attached to Plaintiff's Opposition, Plaintiff appears to tell

Moscou that she had been "dismissed" from the College of New Rochelle because she had failed courses at the College of New Rochelle, in part due to the incident with Wilson.  (*Id*. at 2; Pl.'s Mem. Ex. 3, at 9–16.)  Moscou stated that Moscou and Ford would need to see the letter describing why Plaintiff was dismissed and her grades to decide whether they would accept Plaintiff or whether Plaintiff would have to reapply.  (Pl.'s Mem. Ex. 3, at 8–10.)  Plaintiff alleges Moscou stated "if we knew Professor Susan Wilson, we would have her change the grade, but we don't know her."  (Pl.'s Mem. 2.)

On August 8, 2019, Moscou and Ford sent Plaintiff an email stating they were "unable to readmit [Plaintiff] to the CNR teachout" and "unable to admit [Plaintiff] to the Mercy College Nursing Program."  (Pl.'s Mem. Ex. 1, at 6.)  Plaintiff alleges Moscou and Ford "treated Plaintiff who is Black differently, by abruptly ending conversation and stating Plaintiff always ha[s] a story and that they wanted the facts even when Plaintiff presented the facts."  (Pl.'s Mem. 9.)  Plaintiff additionally alleges that Moscou and Ford told her she was offered placement and that she "did enroll" but that she ultimately "was not accepted" into the nursing BSN program.  (*Id*. at 11.)  Moscou and Ford also allegedly "lied to Plaintiff that they did not know . . . Professor Susan Wilson" and "allowed [] Wilson to discriminate against Plaintiff [in] May 2018 by giving Plaintiff . . . low grades to fail Plaintiff at the College of New Rochelle."  (*Id*. at 2, 11.)  Plaintiff further alleges Moscou and Ford were "behind an elaborate effort to falsify [Plaintiff's] acceptance to Mercy College."  (*Id*. at 5.)

Plaintiff additionally alleges she received a "retaliation email" from Moscou, which stated "do not come here" "cease all communication with the Nursing Department" and "do not go to any of our Mercy College" events.  (Compl. 5.)  This email appears to have been sent on August 27, 2019.  (Pl.'s Mem. Ex. 2, at 1.)

Plaintiff alleges she was diagnosed with anxiety beginning on March 24, 2016 and takes medication for her anxiety.  (Pl.'s Mem. 9.)  Plaintiff alleges she "developed a testing anxiety" and had received extra time on examinations at College of New Rochelle due to her documented disability.  (Pl.'s Mem. Ex. 3, at 2, 7.)  Plaintiff sent a letter from her doctor to Mercy's Office of Accessibility to which she received a reply email on July 12, 2019 stating "Thank you for submitting this letter.  Unfortunately it does not meet our required criteria. . .  Your letter does not address the nature of your disability nor how you are functionally limited.  Can you please review these guidelines with your health care provider and ask that they include more details?" (Pl.'s Mem. Ex. 6, at 6.)  Plaintiff then states that "Mercy College denial of Plaintiff to pursue degree left Plaintiff . . . unbearable."  (Pl.'s Mem. 9.)

On March 1, 2022, Kristen Bowes, a Mercy attorney, emailed Plaintiff stating "you were not in good academic standing when the College of New Rochelle closed and therefore you were not able to transfer into Mercy College."  (Pl.'s Mem. at 8.)  The letter further stated that "at that time, Mercy's Nursing program directors took an independent look at your transcript and confirmed that you do not have sufficient grades to meet the entry requirements for Mercy's Nursing Program."  (Pl.'s Mem. Ex. 2, at 3.)  On March 8, 2022, Moscou and Ford sent an email to a Mercy attorney stating they "would prefer not to meet with" Plaintiff.  (*Id*. at 5–6.)

Plaintiff alleges she has $53,000 of unpaid student loans and has not graduated with a nursing degree.  (Pl.'s Mem. 12.)

C.  Procedural History

Plaintiff filed her Complaint on March 3, 2022.  (Dkt. No. 1.)  Defendants filed the instant Motion and an accompanying Memorandum of Law on August 19, 2022.  (*See* Not. of Mot. (Dkt. No. 19); Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 21).)  Plaintiff

filed her Opposition on September 21, 2022.  (*See* Mem. of Law for Reply to Mot. to Dismiss

("Pl.'s Mem.") (Dkt. No. 23).)  Defendants filed a Reply on October 5, 2022.  (*See* Reply to Mot.

("Defs.' Reply Mem.") (Dkt. No. 25).)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that while a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of

[her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil

Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked

assertions devoid of further factual enhancement."  *Id.*  (alteration and quotation marks omitted).

Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the

speculative level."  *Twombly*, 550 U.S. at 555.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of

facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege

"only enough facts to state a claim to relief that is plausible on its face," *id.* at 570.  However, if

a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[]

complaint must be dismissed."  *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a

complaint states a plausible claim for relief will . . .  be a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense.  But where the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second

alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8

marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior

era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than

conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the

factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per

curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot.*

*Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*,

699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, as noted, "[i]n adjudicating a Rule

12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the

complaint, in documents appended to the complaint or incorporated in the complaint by

reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank*

*of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted); *see also Wang v. Palmisano*,

157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).  However, when a plaintiff proceeds pro se,

the Court "may consider materials outside the complaint to the extent that they are consistent

with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL

3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), and, moreover, must

"construe[ ] [his] [complaint] liberally and interpret[ ] [it] to raise the strongest arguments that

[it] suggest[s]," *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quotation marks

omitted).  That said, "the liberal treatment afforded to pro se litigants does not exempt a pro se

party from compliance with relevant rules of procedural and substantive law."  *Bell v. Jendell*,

980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v.*

*Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

### B.  Analysis

#### 1.  Section 1983

As the basis for jurisdiction in this action, Plaintiff states in her Complaint that she is bringing a § 1983 against state or local officials.  (Compl. 4.)  In order to state a § 1983 claim, a plaintiff must allege (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States."  *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).  "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  *Carlos v. Santos*, 123 F.3d 61, 65 (2d Cir. 1997) (quotation marks and citations omitted).  Plaintiff has not alleged that Defendants are state or local officials under the color of law.  (*See generally* Compl.)  Accordingly, her claims cannot be brought under Section 1983.  *See Kurtz v. Hansell*, No. 20-CV-3401, 2021 WL 1143619, at *12 (S.D.N.Y. Mar. 24, 2021) (dismissing § 1983 claims when plaintiff did not plausibly allege defendants were state actors).

#### 2.  Race Claims

The Court construes Plaintiff's race discrimination and retaliation claims as Title VI and § 1981 claims.  Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be

subjected to discrimination under any program or activity receiving Federal financial assistance."
42 U.S.C. § 2000d.  "To establish a claim under Title VI, a plaintiff must show . . . : (1) that the
entity involved engaged in racial or national origin discrimination; (2) the entity involved is
receiving federal financial aid; and (3) plaintiff was an entitled beneficiary of the program or
activity receiving the aid."  *Babiker v. Ross Univ. Sch. of Med.*, No. 98-CV-1429, 2000 WL
666342, at *4 (S.D.N.Y. May 19, 2000) *aff'd sub nom. Babiker v. Ross Univ. Sch. of Med.*, 86
Fed. App'x 457 (2d Cir. 2004) (internal citations omitted).  To satisfy the first element of a Title
VI claim, a plaintiff must demonstrate "that the defendant discriminated against [plaintiff] on the
basis of race, that the discrimination was intentional, and that the discrimination was a
substantial or motivating factor for the defendant's actions."  *J.E. ex rel. Edwards v. Ctr.
Moriches Union Free Sch. Dist.,* 898 F. Supp. 2d 516, 556 (E.D.N.Y. 2012) (quoting *Tolbert v.
Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001) (internal quotation marks and citations omitted)).

Section 1981 provides, in pertinent part, that "[a]ll persons within the jurisdiction of the
United States shall have the same right . . . to the full and equal benefit of all laws and
proceedings . . . as is enjoyed by white citizens. . . ."  42 U.S.C. § 1981(a).  "This section thus
outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and
conditions of a contractual relationship. . . ."  *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206,
224 (2d Cir. 2004).  "This prohibition applies to . . . independent academic institutions."  *Minto
v. Molloy Coll.*, Nos. 16-CV-276, 16-CV-278, 16-CV-279, 2019 WL 4696287, at *7 (E.D.N.Y.
Sept. 26, 2019) (citing *Tolbert*, 242 F.3d at 69).  To state a claim under Section 1981, plaintiffs
"must allege facts supporting the following elements: (1) plaintiffs are members of a racial
minority; (2) defendants' intent to discriminate on the basis of race; and (3) discrimination
concerning one of the statute's enumerated activities."  *Brown v. City of Oneonta*, 221 F.3d 329,

339 (2d Cir. 2000).  "Those activities covered by Section 1981 include enrollment in a
university. . . ."  *Minto*, 2019 WL 4696287, at *7 (citing *Tripp v. Long Island Univ.*, 48 F. Supp.
2d 220, 224 (E.D.N.Y. 1999) (discussing enumerated activities under § 1981 and finding the
statute provides a cause of action against university charged with discriminatory conduct against
student)).[1]

Claims under both Title VI and § 1981 are subject to the burden-shifting framework
established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Littlejohn v. City of
New York*, 795 F.3d 297, 312 (2d Cir. 2015) ("[Plaintiff]'s disparate treatment claim under
. . . § 1981 . . . is subject to the burden-shifting evidentiary framework set forth in *McDonnell
Douglas* . . . . in the initial phase of [this] litigation."); *Lopez v. Webster Cent. Sch. Dist.*, 682 F.
Supp. 2d 274, 279 (W.D.N.Y. 2010) ("Courts have applied the familiar *McDonnell Douglas*
burden-shifting analysis to cases arising under Title VI.") (footnote omitted).  The three-part
burden-shifting framework requires:

> [a] plaintiff [to] first successfully assert a prima facie claim against defendants.  If
> plaintiff makes out a prima facie case, the burden shifts to the defendant to show a
> legitimate, nondiscriminatory reason for its conduct.  Plaintiff then has the
> opportunity to prove by a preponderance of the evidence that the legitimate reasons
> offered by the defendant were not its true reasons, but were a pretext for
> discrimination.

*JF v. Carmel Cent. Sch. Dist.*, 168 F. Supp. 3d 609, 623 (S.D.N.Y. 2016) (alterations in original).

The Second Circuit has explained, however, that a plaintiff is not required to plead a
prima facie case under *McDonnell Douglas*, at least as the test was originally formulated, to
defeat a motion to dismiss.  *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d
Cir. 2015) (citing *Littlejohn*, 795 F.3d at 306, 311).  Rather, a plaintiff "need only give plausible

---

[1] While the Complaint and Opposition are not models of clarity, Plaintiff does appear to
allege she was enrolled in Mercy and had registered for classes.  (Pl.'s Mem. 10–11.)

support to a minimal inference of discriminatory motivation." *Littlejohn*, 795 F.3d at 311; *see also Moore v. City of New York*, No. 15-CV-6600, 2017 WL 35450, at *11 (S.D.N.Y. Jan. 3, 2017), *adopted by* No. 15-CV-6600, 2017 WL 1064714 (S.D.N.Y. Mar. 20, 2017) (same). Thus, on a motion to dismiss, courts treat the elements of a prima facie case as "an outline of what is necessary to render a plaintiff's . . . discrimination claims for relief plausible." *Sosa v. N.Y.C. Dep't of Educ.*, 368 F. Supp. 3d 489, 495 (E.D.N.Y. 2019) (quoting *Barrett v. Forest Labs., Inc.*, 39 F. Supp. 3d 407, 429 (S.D.N.Y. 2014)); *see also Vega*, 801 F.3d at 84 n.7 ("The elements of a prima facie case may be used as a prism to shed light upon the plausibility of the claim."). Plaintiffs must simply allege facts that allow the court, in substance, to infer the essential elements of a prima facie case. *Id*. Because "a plaintiff is not required to plead a prima facie case under *McDonnell Douglas*, at least as the test was originally formulated, to defeat a motion to dismiss," *Vega*, 801 F.3d at 84 (italics omitted), the Court need only concern itself with the first phase of the *McDonnell Douglas* framework, s*ee Munoz-Nagel v. Guess, Inc.*, No. 12-CV-1312, 2013 WL 6068597, at *1 (S.D.N.Y. Nov. 15, 2013) ("[A] [p]laintiff need not make out a prima facie case at the pleading stage, and may withstand a motion to dismiss by providing a short and plain statement of the claim that shows that she is entitled to relief that gives [the defendant] fair notice of the . . . discrimination claim and the grounds upon which it rests." (italics and citation omitted)); *see also Xiang v. Eagle Enterprises, LLC*, No. 19-CV-1752, 2020 WL 248941, at *4 (S.D.N.Y. Jan. 16, 2020) ("Whether an employee is alleging wrongful termination or a discriminatory failure to accommodate, the requirements to establish a prima facie case are minimal, and a plaintiff's burden is therefore not onerous.") (citation and quotation marks omitted).

### a.  Discrimination

Plaintiff alleges "discrimination by failing to acknowledge my admission as a Black student." (Compl. 5.)  Defendants argue that Plaintiff has made no allegations from which "this Court could infer that the Mercy Defendants racially discriminated against" Plaintiff.  (Defs.' Mem. 6.)  This Court agrees.

"The essential elements of [a race discrimination] claim are actions that were racially motivated and purposefully discriminatory." *Minto*, 2019 WL 4696287, at *8.  Plaintiffs may assert a prima facie case through "direct evidence" of discrimination, or when there is no direct evidence of discriminatory conduct, they may show that: "(1) [plaintiff] is a member of a protected class; (2) she suffered an adverse action in pursuit of her education by defendant; (3) she was treated differently from similarly situated students who were not members of the protected class; and (4) she was qualified to continue in her educational pursuit." *J.E. ex rel. Edwards*, 898 F. Supp. 2d at 557; *Minto*, 2019 WL 4696287, at *8 (noting that an inference of discriminatory intent in Title VI and Section 1981 cases can be drawn from "remarks that could be viewed as reflecting discriminatory animus," or through facts establishing that students outside of plaintiff's protected class "were given preferential treatment") (quoting *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007)).  "A plaintiff relying on disparate treatment evidence must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (quotation marks omitted).  Though "[i]ssues regarding appropriate comparators are often addressed in the context of a summary judgment motion following discovery, courts grant motions to dismiss where the complaint failed to proffer sufficient facts regarding comparators to plausibly support the contention the comparators were similarly situated to the plaintiff." *Minto*

*v. Molloy Coll.*, No. 16-CV-276, 2019 WL 4696287, at \*9 (E.D.N.Y. Sept. 26, 2019) (citation and quotation marks omitted).  Accordingly, a "plaintiff alleging racial or gender discrimination by a university must do more than recite conclusory assertions.  In order to survive a motion to dismiss, the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent."  *Manolov v. Borough of Manhattan Cmty. Coll.*, 952 F. Supp. 2d 522, 532 (S.D.N.Y. 2013).

Plaintiff alleges and Defendants do not dispute that she is Black.  (Compl. 5; *see generally* Defs.' Mem.)  However, Plaintiff has not made any allegations of direct discrimination, for instance, by alleging that Defendants referenced her race or made any discriminatory comments.  (*See generally* Compl.; Pl.'s Mem.)  Instead, she only asserts she experienced "[r]acial [d]iscrimination in [a] white privilege school" (Compl. 5) and that Mercy has "the necessary tools and schemes . . . to blackmail an African[-]American female student by using white hierarchy" (Pl.'s Mem. 5).  However, such a complaint, "consisting of nothing more than naked assertions, and setting forth no facts upon which a court could find a violation of the Civil Rights Act, fails to state a claim under Rule 12(b)(6)."  *Minto*, 2019 WL 4696287, at \*9.

Furthermore, while Plaintiff states that Moscou and Ford "treated Plaintiff who is [B]lack diff[er]ently, by abruptly ending conversation and stating Plaintiff always ha[s] a story and that they wanted the facts even when Plaintiff presented the facts," (Pl.'s Mem. 9) and that Mercy failed "to acknowledge" Plaintiff's "admission as a Black student" (Compl. 5), she fails to point to any similarly situated students who have been treated differently.  Because Plaintiff's Complaint is devoid of factual content that permits a plausible inference of any purposefully discriminatory conduct, her race discrimination claim cannot stand.  *See Minto*, 2019 WL

4696287, at *11 (holding that "[p]laintiffs' bald assertions of discrimination and retaliation, unsupported by any comments, actions, or examples of similarly-situated individuals outside of [her] protected class being treated differently do not permit the court to infer that defendant [] possessed a discriminatory motive" under Title VI or §1981) (quotation marks omitted); *Manolov*, 952 F. Supp. 2d at 532–33 (dismissing Title VI claim because "[n]owhere in either the [c]omplaint or his opposition papers does [plaintiff] allege that any defendant referred to his race or gender, nor does he recite any other fact from which race- or gender-based discriminatory intent reasonably could be inferred" and because plaintiff had "failed to allege any facts suggesting that he or other white males were treated differently than other students") (italics omitted); *Williams v. City Univ. of N.Y., Brooklyn Coll.*, No. 10-CV-2127, 2011 WL 13157370, at *4 (E.D.N.Y. Feb. 10, 2011) (dismissing discrimination claims because "absent from [plaintiff's] complaint are any allegations that any College employee made any remarks that could be viewed as reflecting discriminatory animus or that any non-African American students were given preferential treatment") (quotation marks omitted); *Lopez v. Bay Shore Union Free Sch. Dist.*, 668 F. Supp. 2d 406, 414–15 (E.D.N.Y. 2009) (holding that allegation that school district's actions were "motivated by the Plaintiff's race and national origin" were not sufficient to survive motion to dismiss); *Scaggs v. N.Y. Dep't of Educ.*, No. 06-CV-799, 2007 WL 1456221, at *12 (E.D.N.Y. May 16, 2007) (dismissing Title VI claim because complaint failed to allege minority plaintiffs were treated any differently than similarly-situated white children).[2]

---

[2] Plaintiff also has not pled that Mercy receives federal financial aid and that Plaintiff was an entitled beneficiary of the program receiving that aid; on that basis alone, her Title VI claim must also be dismissed. *See Verdi v. City of New York*, 306 F. Supp. 3d 532, 546 (S.D.N.Y. 2018) (dismissing plaintiff's Title VI claim when his "allegations regarding federal funding are bare and conclusory and do not describe the federal funding the DOE received, let alone link that funding to the students whose discrimination was the subject of Plaintiff's complaints").

### b.  Retaliation

Defendants argue that Plaintiff "fails to plausibly allege that . . . Defendants retaliated against her based on her race."  (Defs.' Mem. 7.)  To establish a retaliation claim under Title VI and Section 1981, Plaintiff must plausibly allege that: "(i) [she] was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action."  *Ikedilo v. Statter,* No. 19-CV-9967, 2020 WL 5849049, at *10 (S.D.N.Y. Sept. 30, 2020).  An adverse action is one that "would deter an individual of ordinary firmness, situated similarly" from engaging in the protected activity.  *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 227 (2d Cir. 2006).  A plaintiff can demonstrate the causal connection in one of two ways: "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant."  *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000).  "There is no firm outer limit to the temporal proximity required, but most courts in the Second Circuit have held that a lapse of time beyond two or three months will break the causal inference."  *De Figueroa v. New York*, 403 F. Supp. 3d 133, 157 (E.D.N.Y. 2019) (citing *Walder v. White Plains Bd. of Educ.*, 738 F. Supp. 2d 483, 503–04 (S.D.N.Y. 2010) (collecting cases)); *see also Dodd v. City Univ. of N.Y.*, 489 F. Supp. 3d 219, 247 (S.D.N.Y. 2020) ("Generally, to show causation through temporal proximity alone, courts in this Circuit require no more than two months to have passed between a protected activity and an adverse action.").

To the extent Plaintiff is claiming that her rejection from Mercy and the subsequent emails instructing her to cease communication with the nursing department and to not "go to any of our Mercy College" constitute adverse actions, she has not shown a causal connection between any protected activity and such actions.  (Compl. 5.)  Plaintiff alleges she went through an internal grievance process regarding the treatment she received from Wilson at some point in 2018 with the College of New Rochelle.  (Pl.'s Mem. Ex. 4, 13–33.)  It appears that Plaintiff was first notified she was not enrolled at Mercy on approximately July 23, 2019, was told by Ford and Moscou in an email that she was not admitted to the program on August 8, 2019, and received the "retaliation email" on August 27, 2019.  (Pl.'s Mem 8–9; Pl.'s Mem. Ex. 1, at 6.)  Even assuming that the 2018 grievance process was a protected activity, a determination the Court has not made, at least six months elapsed between the filing of the internal grievance against Wilson and Mercy's rejections and "retaliation email."  (Compl. 5.)  Accordingly, because Plaintiff has not alleged any direct retaliatory animus against her by Defendants or causation through temporal proximity, Plaintiff has not plausibly alleged causation.  *See Torre v. Charter Commc'ns, Inc*., 493 F. Supp. 3d 276, 289 (S.D.N.Y. 2020) (dismissing a retaliation claim where "the alleged retaliatory conduct took place more than five months after engaging in protected activity" and the plaintiff failed to "allege any other evidence of a causal connection"); *Ray v. N.Y. State Ins. Fund*, No. 16-CV-2895, 2018 WL 3475467, at *11 (S.D.N.Y. July 18, 2018) (explaining that "a temporal gap of more than a few months will generally be insufficient to raise a plausible inference of causation without more" and collecting cases) (quotation marks omitted); *Wojcik v. Brandiss*, 973 F. Supp. 2d 195, 216 (E.D.N.Y. 2013) (holding a period of nearly six months between the employee's complaints about his supervisor and the incident that led to his termination was too long to support his retaliation claim); *Chukwueze v. NYCERS*, 891

16

F. Supp. 2d 443, 457 (S.D.N.Y. 2012) ("[T]he temporal proximity between [the plaintiff's protected activity] and the alleged adverse employment action—somewhere between three and six months—is insufficient, standing alone, to establish a causal connection.").[3]

### 3. Disability Claims

Plaintiff seeks relief for "discrimination [b]ased on [d]isability" under Title VI. (Compl. 5.) However, Title VI does not govern discrimination based on disability; by its plain terms, Title VI governs discrimination based on "race, color, or national origin" in programs receiving federal financial assistance. 42 U.S.C. § 2000d. Instead, this Court construes Plaintiff's claim of "discrimination [b]ased on [d]isability" (Compl. 5) as brought under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12132, *et seq.* In her Opposition, Plaintiff claims that she sent Mercy's Office of Accessibility a letter regarding her anxiety diagnosis to which she received a reply email stating "Thank you for submitting this letter. Unfortunately it does not meet all required criteria. . . . [y]our letter does not address the nature of your disability nor how you are functionally limited. Can you please review these Guidelines with your health care provider and ask that they include more details?" (Pl.'s Mem. Ex. 6, at 6.) Plaintiff then states that "Mercy['s] [] denial of Plaintiff to pursue degree left Plaintiff . . . unbearable." (Pl.'s Mem 9.)[4]

---

[3] As noted above, *supra* II.B.2.a, Plaintiff's Title VI claim additionally fails because she has not alleged Mercy receives federal financial aid and that Plaintiff was an entitled beneficiary of the program receiving that aid.

[4] Defendants claim that Plaintiff has failed to give Defendants fair notice of her claims and seek dismissal or, in the alternative, a more definite statement. (Defs.' Mem. 3–5; Defs.' Reply Mem. 3–4.) Federal Rules of Civil Procedure 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *See Twombly*, 550 U.S. at 555. The Court cannot say that Plaintiff's allegations do not give Defendants fair notice of plausible claims under the ADA, especially given Plaintiff's pro se status. Plaintiff alleges that she suffered from anxiety which interfered with her testing

Title III of the ADA states that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or operates a place of public accommodation[.]" 42 U.S.C. § 12182(a). The ADA defines a "public accommodation" as a private entity affecting commerce, including, inter alia, "a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education." 42 U.S.C. § 12181(7)(J). "A private university . . . is a place of public accommodation subject to the ADA." *Maxwell v. N.Y. Univ.*, No. 08-CV-3583, 2009 WL 1576295, at *10 (S.D.N.Y. June 1, 2009), *aff'd*, 407 F. App'x 524 (2d Cir. 2010) (citing *McInerney v. Rensselaer Polytechnic Institute*, 505 F.3d 135, 138 (2d Cir. 2007)).

To establish a violation under the ADA, a plaintiff must demonstrate that "(1) [she] [is] a qualified individual[] with a disability; (2) that the defendants are subject to the ADA; and (3) that [the] plaintiff[] [was] denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or [was] otherwise discriminated against by defendants, by

---

capacities, she submitted a request to Mercy for accommodations, she was ultimately rejected from Mercy, and received a "retaliation email" which directed her to cease communicating with the nursing department and to "not go to any of our Mercy College." (*See generally* Compl.; Pl.'s Mem.) On balance, it appears that, as to the ADA claim, Plaintiff has provided Defendants "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (discussing liberal standard for evaluation of pro se pleadings); *cf. Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987) (holding allegations that fail to give notice of the basic events and circumstances "have no meaning" as a practical matter and, as a matter of law, are insufficient to state a claim); *Martinez v. RZB Fin. LLC*, No. 10-CV-4214, 2010 WL 4449031, at *4 (S.D.N.Y. Nov. 5, 2010) (holding plaintiff's complaint did not provide fair notice to defendants of ADA claim because it contained no description of her alleged disability); *Harris v. Transp. Workers Union L-100*, No. 07-CV-1031, 2007 WL 9723338, at *2 (E.D.N.Y. Oct. 17, 2007) (holding that where plaintiff "check[ed] off boxes on the amended complaint stating that he was discriminated against on the basis of his race (Black), color (Black), age (46), religion (practicing) and disability (asthma)" but "d[id] not provide any facts to support those claims" the assertions failed to give defendants fair notice of plaintiff's claims).

reason of [her] disabilities." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (quotation marks omitted).

ADA disability discrimination claims are analyzed under the three-part, burden-shifting framework established in *McDonnell Douglas. See Bey v. City of New York*, 999 F.3d 157, 165 (2d Cir. 2021) ("Like many other discrimination claims, ADA claims are subject to the burden-shifting framework articulated in *McDonnell Douglas*") (citation omitted); *Brizzi v. Utica Mut. Ins. Co.*, 529 F. Supp. 3d 44, 54 (E.D.N.Y. 2021) ("The *McDonnell Douglas* framework has been applied to ADA cases as well as Title VII discrimination cases."). As with racial discrimination claims, plaintiffs alleging ADA violations need not satisfy the *McDonnell Douglas* test at the pleading stage. See *Mazur v. New York State Dep't of Corr.*, No. 20-CV-624, 2021 WL 6774997, at *2 (W.D.N.Y. Jan. 20, 2021), *report and recommendation adopted*, No. 20-CV-624, 2021 WL 1110583 (W.D.N.Y. Mar. 23, 2021) (noting that in the ADA context that "[f]or a claim of discrimination to survive a motion to dismiss, a plaintiff need not establish a prima facie case under the framework established by *McDonnell Douglas*" but that a "[plaintiff] must at least set forth enough factual allegations to plausibly support each of the . . . Basic elements of a [discrimination] claim") (alterations in original); *Szuszkiewicz v. JPMorgan Chase Bank*, 12 F. Supp. 3d 330, 343 (E.D.N.Y. 2014) (noting that "the burden-shifting framework laid out in *McDonnell Douglas* is not applicable on a motion to dismiss" in an ADA case).

### a. Failure to Reasonably Accommodate

The ADA requires that qualified disabled individuals "receive reasonable accommodations that permit them to have access to and take a meaningful part in public services and public accommodations." *Powell v. National Bd. of Medical Examiners*, 364 F.3d 79, 85 (2d Cir. 2004) (quotation marks omitted). Indeed, the ADA defines "discrimination" to include,

inter alia, "a failure to make reasonable modifications in polices, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of the goods. . . ." 42 U.S.C. § 12182(b)(2)(a)(ii).  To make out a claim for a failure to reasonably accommodate, a plaintiff must show that "the defendants refused to make such accommodation."  *Getso v. City Univ. of N.Y.*, No. 08-CV-7469, 2009 WL 4042848, at *4 (S.D.N.Y. Nov. 18, 2009) (citing *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1999)).  A refusal of a request for a reasonable accommodation "can be both actual or constructive, as an indeterminate delay has the same effect as an outright denial."  *Logan v. Matveevskii*, 57 F. Supp. 3d 234, 257 (S.D.N.Y. 2014) (quoting *Groome Res. Ltd. L.L.C. v. Parish of Jefferson*, 234 F.3d 192, 199 (5th Cir. 2000)); *see Wenc v. New London Bd. of Educ.*, No. 14-CV-840, 2016 WL 4410061, at *12 (D. Conn. Aug. 16, 2016), *aff'd*, 702 F. App'x 27 (2d Cir. 2017) (holding that a "[a] delay in providing a reasonable accommodation can violate the ADA, if that delay is caused by discriminatory animus and is sufficiently lengthy to constitute a constructive denial of a reasonable accommodation").

Defendants argue that Plaintiff has not alleged that "Defendants failed to reasonably accommodate" Plaintiff.  (Defs.' Reply Mem. 6.)  This Court agrees.  Indeed, as it pertains to her accommodations request, Plaintiff has only alleged that Mercy requested additional information about her disability—not that Mercy denied her accommodation request.  (*See generally* Pl.'s Mem.)  At most, Plaintiff has alleged that Mercy began to engage "in an interactive process with her when trying to provide her with the requested accommodations."  *Graham v. Three Vill. Cent. Sch. Dist.*, No. 11-CV-5182, 2013 WL 5445736, at *19 (E.D.N.Y. Sept. 30, 2013) (citing

*Jackan v. N.Y. State Dep't of Labor*, 205 F.3d 562, 566 (2d Cir. 2000) ("The ADA envisions an 'interactive process' by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated.")); *see also Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 219 (2d Cir. 2001) (describing the interactive process as "meet[ing] with the employee who requests an accommodation, request[ing] information about the condition and what limitations the employee has, ask[ing] the employee what he or she specifically wants, show[ing] some sign of having considered [the] employee's request, and offer[ing] and discuss[ing] available alternatives when the request is too burdensome") (alterations in original) (quotation marks and citation omitted).  Additionally, Plaintiff has not alleged any constructive delay in accommodating her request: Plaintiff alleges she submitted an accommodation letter on July 11, 2019, and that the next day, she received an email that her letter did not meet the required criteria for the documentation guidelines required by Mercy, directing her to resubmit.  (Pl.'s Mem. Ex. 6, at 3, 6.)  *Cf. Lewis v. Boehringer Ingelheim Pharm., Inc.*, 79 F. Supp. 3d 394, 411 (D. Conn. 2015) (holding eight or nine month delay could constitute a failure to accommodate); *O'Toole v. Ulster County*, No. 12-CV-1228, 2014 WL 4900776 at *8 (N.D.N.Y. Sept. 30, 2014) (holding six month delay in providing ergonomic chair unreasonable); *Logan*, 57 F. Supp. 3d at 271 ("[C]ourts have found plaintiffs' requests for reasonable accommodations to have been constructively denied after delays approximating four months." (collecting cases)).  While "a covered entity's failure to provide [reasonable] accommodations will be sufficient to satisfy the third element" necessary to establish a violation under the ADA, Plaintiff has not alleged that Mercy failed to provide her with a reasonable accommodation.  *McInerney v. Rensselaer Polytechnic Inst.*, 688 F. Supp. 2d 117, 125 (N.D.N.Y. 2010); *see also Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426,

438 (E.D.N.Y. 2015) (holding that plaintiff "cannot mount a viable claim based on a failure to reasonably" accommodate where plaintiff did not allege a failure to accommodate); *Getso*, 2009 WL 4042848, at *4 (dismissing failure to accommodate claim when the complaint failed to allege that plaintiff was denied any specific accommodation).

b.  Discrimination

To establish disability discrimination under the ADA, a plaintiff must establish that the "exclusion or discrimination was due to [her] disability." *Roggenbach v. Touro Coll. of Osteopathic Med.*, 7 F. Supp. 3d 338, 344 (S.D.N.Y. 2014) (quoting *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009)).  Absent direct evidence demonstrating discriminatory intent, "[a] plaintiff can raise an inference of discrimination by demonstrating the disparate treatment of similarly situated employees but 'must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself.'"  *Kosack v. Entergy Enters., Inc.*, No. 14-CV-9605, 2019 WL 330870, at *6 (S.D.N.Y. Jan. 25, 2019) (quoting *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003)).

Defendants argue that Plaintiff "does not allege any facts suggesting that Mercy denied her entry to the Nursing Program or took any adverse action against her" based on any disability. (Defs.' Reply Mem. 6.)  Indeed, Plaintiff has not alleged that Defendants referenced her disability in any derogatory manner or made any discriminatory comments regarding her disability.  (*See generally* Compl.; Pl.'s Mem.)  Furthermore, Plaintiff has not provided any indirect evidence of discrimination by identifying any comparators whose treatment by Defendants would support an inference of discrimination.  (*Id.*)  Because Plaintiff provides no factual support for any alleged discriminatory animus on the basis of her disability, she has not alleged facts plausibly suggesting any adverse action occurred "by reason of [her] disabilities."

22

*Henrietta D.*, 331 F.3d at 272; *see Morren v. N.Y. Univ.*, 20-CV-10802, 2022 WL 1666918, at

*17 (S.D.N.Y. Apr. 29, 2022) (dismissing the plaintiff's discrimination claim because he did not

allege sufficient factual allegations that "similarly situated non-Black or non-disabled employees

were treated differently from [him]"); *Ferraro v. N.Y.C. Dep't of Educ.*, 404 F. Supp. 3d 691,

712 (E.D.N.Y. 2017), *aff'd*, 752 F. App'x 70 (2d Cir. 2018) (holding plaintiff's ADA

discrimination claim failed "to provide direct evidence of discrimination, such as inflammatory

or discriminatory comments regarding [p]laintiff's disability" or "any indirect evidence of

discrimination by identifying any comparators whose treatment by Defendants would support an

inference of discrimination"); *Dollinger v. N.Y. State Ins. Fund*, No. 14-CV-908, 2016 WL

6833993, at *6 (N.D.N.Y. Nov. 18, 2016) ("Aside from entirely conclusory allegations,

[p]laintiff's second amended complaint fails to plausibly allege that he suffered an adverse []

action because of any alleged disability."); *see also Payne v. Cornell Univ.*, No. 21-CV-109,

2022 WL 453441, at *3 (2d Cir. Feb. 15, 2022) (summary order) ("We agree with the district

court that [the plaintiff] failed to raise an inference of discrimination because she failed to

compare, let alone identify, a similarly situated employee. . . .") (quotation marks omitted).

### c.  Retaliation

"In order to establish a prima facie case of retaliation, [Plaintiff] must show that: (1) [s]he

engaged in an activity protected by the ADA; (2) [Defendants were] aware of this activity; (3)

[Defendants] took adverse . . . action against [her]; and (4) a causal connection exists between

the alleged adverse action and the protected activity."  *Treglia v. Town of Manlius*, 313 F.3d 713,

719 (2d Cir. 2002).  A plaintiff can satisfy the fourth element—a causal connection—by "(a)

indirectly showing that the protected activity was followed closely by discriminatory treatment;

(b) indirectly though other evidence such as disparate treatment of fellow employees who

engaged in similar conduct; or (c) directly through evidence of retaliatory animus." *Romano v. A360 Media, LLC*, No. 20-CV-8988, 2023 WL 348459, at *10 (S.D.N.Y. Jan. 20, 2023) (quotation marks and citation omitted).

Making a request for "a reasonable accommodation of a disability is an ADA protected activity." *Clark v. Jewish Childcare Ass'n, Inc.*, 96 F. Supp. 3d 237, 262 (S.D.N.Y. 2015).[5] Here, Plaintiff appears to have applied for an accommodation on July 11, 2019. (Pl.'s Mem. Ex. 6, at 3.) Mercy was aware Plaintiff submitted the accommodation request—the associate director of the Office of Accessibility, Sara Venezian, responded to Plaintiff's accommodation request submission the following day. (Pl.'s Mem. Ex. 6, at 3, 6–7.) The "Second Circuit has made clear that it is not necessary that particular individuals know of the protected activities at issue to satisfy the second element of the retaliation analysis[.]" *Seivright v. Montefiore Med. Ctr., Hosp. of Albert Einstein Coll. of Med.*, No. 11-CV-8934, 2014 WL 896744, at *11 (S.D.N.Y. Mar. 3, 2014) (citing *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000) (holding that general corporate knowledge suffices)); *see also Alston v. N.Y.C. Transit Auth.*, 14 F. Supp. 2d 308, 311 (S.D.N.Y. 1998) ("In order to satisfy the second prong of her retaliation claim, plaintiff need not show that individual decision-makers within the NYCTA knew that she had filed . . . [an] EEOC complaint[].").

By July 23, 2019, Plaintiff alleges she was told she was no longer a student at Mercy and on August 8, 2019, Plaintiff received an email from Ford and Moscou that they were "unable to readmit [Plaintiff] to the CNR teachout" and "unable to admit [Plaintiff] to the Mercy College

---

[5] "[U]nlike a plaintiff in an ADA discrimination case, a plaintiff in a[n] ADA retaliation case need not establish that [s]he is a qualified individual with a disability." *Seigel v. Structure Tone Org.*, No. 19-CV-7307, 2022 WL 14746408, at *8 (S.D.N.Y. Oct. 24, 2022) (citation and quotation marks omitted).

nursing program." (Pl.'s Mem. 8; Pl.'s Mem. Ex. 1, at 6.)  Courts have held that such actions constitute adverse actions in the education context.  *See Johnson v. N.Y. Univ.*, No. 17-CV-6184, 2018 WL 3966703, at *8 (S.D.N.Y. Aug. 20, 2018), *report and recommendation adopted*, No. 17-CV-6184, 2018 WL 4908108 (S.D.N.Y. Oct. 10, 2018), *aff'd*, 800 F. App'x 18 (2d Cir. 2020) (classifying denial of application for readmission to college as an adverse action); *Koumantaros v. City Univ. of N.Y.*, No. 03-CV-10170, 2007 WL 840115, at *8 (S.D.N.Y. Mar. 19, 2007) (noting that dismissal from academic program constituted an adverse action).  Furthermore, the proximity between the protected activity and the adverse actions—at a minimum, 12 days, and at a maximum approximately three weeks—is well within the temporal proximity required by courts in the Second Circuit to demonstrate causation at the motion to dismiss phase.  *See Dodd*, 489 F. Supp. 3d at 247 ("Generally, to show causation through temporal proximity alone, courts in this Circuit require no more than two months to have passed between a protected activity and an adverse action."); *see also Vega,* 801 F.3d at 92 (holding temporal proximity satisfied when retaliation occurred three months after the protected activity); *Ulrich v. Soft Drink, Brewery Workers & Delivery Emps., Indus. Emps., Warehousemen, Helpers & Miscellaneous Workers, Greater N.Y. & Vicinity, Loc. Union No. 812*, 425 F. Supp. 3d 234, 241 (S.D.N.Y. 2019) (holding temporal proximity satisfied when retaliation occurred just over two months after the protected activity).  Accordingly, Plaintiff's ADA retaliation claim survives.  *See Laface v. E. Suffolk Boces*, 349 F. Supp. 3d 126, 151 (E.D.N.Y. 2018) (holding retaliation claim alleging the defendants retaliated against the plaintiff for requesting accommodations where adverse action occurred within one to two months after protected actions survived motion to dismiss).[6]

---

[6] Because at the motion to dismiss phase, "the Court need only concern itself with the first phase of the *McDonnell Douglas* framework" the Court does not consider any nondiscriminatory reason for the adverse action, namely that Plaintiff had been dismissed from

4. Breach of Contract

"Under New York law, a breach of contract claim requires (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Chasman v. JP Morgan Chase Bank, NA*, No. 18-CV-6681, 2020 WL 207784, at \*2 (S.D.N.Y. Jan. 14, 2020), *aff'd sub nom. Chasman v. JPMorgan Chase Bank, N.A.*, 854 F. App'x 394 (2d Cir. 2021). To plead a claim for breach of contract, a plaintiff "must provide specific allegations as to an agreement between the parties, the terms of that agreement, and what provisions of the agreement were breached as a result of the acts at issue." *Id.*; *Berman v. Sugo LLC,* 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008) ("Stating in a conclusory manner that an agreement was breached does not sustain a claim of breach of contract.").

Plaintiff asserts that there was a "contract signed in exchange for Plaintiff BSN Nursing Degree" which "was revoked by Mercy [] lying on Plaintiff grades from the College of New Rochelle." (Pl.'s Mem. 13.) Plaintiff further elaborates that "Mercy [] has broken its contractual promise to Plaintiff . . . after offering an acceptance, placement, student application, and [f]inancial [a]id then unaccepted." (*Id.* at 10.) Plaintiff additionally alleges "Plaintiff's grades were in good standing and yet Mercy [C]ollege revoked Plaintiff['s] admission stating that Plaintiff has poor grades and there was no warning about poor grades" and that Mercy "breached their own established standard and contract." (*Id.*) Insofar as Plaintiff is asserting there existed a signed enrollment contract between her and Mercy that Mercy violated, she has not identified what provision of the alleged contract Mercy has violated. (*See generally* Compl.; Pl.'s Mem.)

---

and was not in good standing with the College of New Rochelle. *Williams v. Westchester Med. Ctr. Health Network*, No. 21-CV-3746, 2022 WL 4485298, at \*6 (S.D.N.Y. Sept. 27, 2022). However, this Court can consider such argument at summary judgment.

Because Plaintiff has failed to provide specific allegations as to the agreement with Mercy, the terms of that agreement, and what provisions of the agreement Mercy breached, the breach of contract claim fails.  *See Timberg v. Toombs,* No. 20-CV-6060, 2022 WL 954739, at *11 (E.D.N.Y. Mar. 30, 2022) (dismissing breach of contract claim where plaintiff alleged that the parties "entered into a contract," and presented only conclusory statements about what the agreement required); *Nuevos Aires Shows LLC v. Bühler*, No. 19-CV-1822, 2020 WL 1903995, at *4 (S.D.N.Y. Apr. 17, 2020) (holding that because the "simple characterization[s] of the promise fail to allege the specific terms of the alleged verbal agreement. . . . [t]hey fail to assert plaintiff's specific obligations to the [ ] defendants, such that the Court could determine whether plaintiff has performed those obligations, as required in adjudicating a breach of contract claim") (quotation marks omitted); *Chasman*, 2020 WL 207784, at *3 (holding breach of contract claim failed when plaintiff did not supply any language from the contract identifying "any contractual provision that defendant allegedly violated"); *Hekmat v. U.S. Transp. Sec. Admin*., 247 F. Supp. 3d 427, 433 (S.D.N.Y. 2017) (dismissing breach of contract claim because plaintiffs only alleged generally that they "entered into a contract" with JetBlue, but failed to identify any provision that was breached); *Valentini v. Citigroup, Inc.*, 837 F. Supp. 2d 304, 327 (S.D.N.Y. 2011) (dismissing breach of contract claim "because [p]laintiffs fail to identify what specific provisions of the contract they claim [d]efendants breached"); *Tiu-Malabanan v. Univ. of Rochester*, No. 07-CV-6499, 2008 WL 788637, at *5 (W.D.N.Y. Mar. 21, 2008) ("[W]hile a student can sue his school for breach of contract, the mere allegation of mistreatment without the identification of a specific breached promise or obligation does not state a claim on which relief can be granted.") (quotation marks omitted); *Posner v. Minnesota Min. & Mfg. Co*., 713 F. Supp. 562, 563

(E.D.N.Y. 1989) ("[I]n asserting a breach of contract claim, the complaint must plead the terms of the agreement upon which defendant's liability rests.").

### 5. Fraud

Defendants argue that Plaintiff's fraud claim fails because it is not alleged with sufficient particularity.  (Defs.' Mem. 4–5.)  To state a claim for fraud under New York law, a plaintiff must allege "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Budhani v. Monster Energy Co.*, No. 20-CV-1409, 2021 WL 1104988, at *12 (S.D.N.Y. Mar. 22, 2021) (quoting *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001)).  Federal Rule of Civil Procedure 9(b) sets forth a heightened pleading standard for allegations of fraud: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  "[I]n order to comply with Rule 9(b), the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quotation marks and citation omitted).

Under Rule 9(b), "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally."  Fed. R. Civ. P. 9(b).  But because courts "must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations[,] . . .  Plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." *Lerner*, 459 F.3d at 290 (alterations in original) (citations and quotation marks omitted).  "The requisite strong inference of fraud may be established either (a) by alleging facts to show that defendants had both motive and

opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* (quotation marks and citations omitted).

Plaintiff alleges that 1) "Mercy [] convinced Plaintiff to enroll in . . . Mercy [] by lying about the nature of the education provided," 2) "Moscou and [] Ford did tell Plaintiff that as a student, (Plaintiff) was offered placement and did enroll in Mercy College . . . but Plaintiff was not accepted of completing the Nursing BSN program," 3) Ford and Moscou "lied to Plaintiff that they did not know the alleged Professor Susan Wilson," and, 4) "Mercy [] promises Plaintiff particular classes and was enrolled for the classes [l]eadership and [c]ommunity and later knowing that the information was misleading/false." (Pl.'s Mem. 11.)[7]  Plaintiff has not stated with any specificity what lie Mercy conveyed to Plaintiff regarding the nature of the education provided.  (*See generally* Compl.; Pl.'s Mem.)  *See Murray Eng'g P.C. v. Remke*, No. 17-CV-6267, 2018 WL 3773991, at *14 (S.D.N.Y. Aug. 9, 2018) (holding that plaintiff's allegations that they relied upon "representations regarding [defendant]'s financial strength and stability, as well as [defendant]'s repeated promises of payment" failed to allege statements with specificity) (alterations in original).

Furthermore, the Complaint does not allege where and when each of the alleged statements were made to Plaintiff as required to plead fraud with particularity.  *See Cambridge Cap. LLC v. Ruby Has LLC*, 565 F. Supp. 3d 420, 462 (S.D.N.Y. 2021) (holding that allegations that a party made misrepresentations "during this time" and "throughout the negotiations" are

---

[7] The Court notes that the allegation that "Moscou and [] Ford did tell Plaintiff that as a student, (Plaintiff) was offered placement and did enroll in Mercy College . . . but Plaintiff was not accepted of completing the Nursing BSN program," (Pl.'s Mem. 11) contradicts the recorded meetings that Plaintiff has attached to her Opposition, where Moscou and Ford tell Plaintiff they need to see her transcript and other documents to determine whether they were going to "accept" Plaintiff or whether she was "going to have to reapply" (Pl.'s Mem. Ex. 3, at 8).

insufficiently specific about when the statements were made and therefore did not contain the

particularity necessary to state a fraud claim in federal court and under New York law);

*Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, No. 12-CV-5354, 2014 WL 1311979,

at *5 (E.D.N.Y. Mar. 28, 2014) (holding that allegations that "at some point between May and

June of 2011" was insufficient to meet 9(b)'s particularity requirements); *Anwar v. Fairfield*

*Greenwich Ltd.*, 826 F. Supp. 2d 578, 586 (S.D.N.Y. 2011) (holding that "approximate time

frame" is insufficient to meet "when" requirement under Rule 9(b)); *Goldmark, Inc. v. Certain*

*Underwriters at Lloyd's London*, No. 05-CV-3463, 2009 WL 10705786, at *4 (E.D.N.Y. June 8,

2009) (holding insufficient particularity where complaint did not specify time and place of

statements); *Jeff Isaac Rare Coins, Inc. v. Yaffe*, 792 F. Supp. 13, 15 (E.D.N.Y. 1992) (holding

that "early January of 1991" was too approximate a date to satisfy the Rule 9(b) pleading

requirement).

Plaintiff additionally has not explained why these statements were fraudulent at the time

they were made, instead simply alleging that Defendants have "lied" and "acted intentionally,

giving Plaintiff false statement." (Pl.'s Mem. 11.) "[P]laintiffs must do more than say that the

statements . . . were false and misleading; they must demonstrate with specificity why and how

that is so." *Cambridge Cap. LLC,* 565 F. Supp. 3d at 463 (citing *Rombach v. Chang*, 355 F.3d

164, 174 (2d Cir. 2004); *see also Goplen v. 51job, Inc.*, 453 F. Supp. 2d 759, 767 (S.D.N.Y.

2006) (noting a plaintiff must explain "why the statement was fraudulent, rather than simply

mistaken"). For instance, Plaintiff presumably alleges that Moscou and Ford's statement that

they did not know Wilson was false because Wilson was at some point hired by Mercy. (Pl.'s

Mem. 3.) However, it is unclear when Moscou and Ford made the alleged statement and when

exactly Wilson was hired by Mercy—accordingly, Plaintiff has not raised an inference that

Moscou and Ford's alleged statement was false at the time it was made.  *In re Nokia Oyj (Nokia Corp.) Sec. Litig.,* 423 F. Supp. 2d 364, 392 (S.D.N.Y. 2006) ("Under the pleading requirements, a complaint must explain, with adequate specificity, why the alleged false or misleading statements were actually false or misleading when made.").[8]  Similarly, Plaintiff has not alleged that promises made to Plaintiff regarding particular classes or her enrollment were false when they were made.  *Wade Park Land Holdings, LLC v. Kalikow*, 589 F. Supp. 3d 335, 379 (S.D.N.Y. 2022), *amended*, No. 21-CV-1657, 2022 WL 2479110 (S.D.N.Y. July 6, 2022) (holding pleading was deficient in part because of allegations of fraud by hindsight where "[p]laintiffs fail to plead facts that demonstrate that the statements were false when made"); *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 624 (S.D.N.Y. 2005) ("Plaintiffs must allege facts indicating that the statements were false and misleading at the time they were made, because fraud cannot be pled by hindsight. . . . [p]laintiffs must supply some factual basis for the allegation that the defendants knew or should have known that the statements were false at some point during the time period alleged.") (quotation marks and citations omitted).

Finally, Plaintiff has not alleged any fact demonstrating Defendants had a motive to commit fraud.  "[A]llegations of motive are sufficient if they entail concrete benefits that could be realized by one or more of the false statements and wrongful disclosures alleged."  *Phoenix Companies, Inc. v. Concentrix Ins. Admin. Sols. Corp.*, 554 F. Supp. 3d 568, 601 (S.D.N.Y. 2021) (quotation marks and citation omitted).  "Where motive is not apparent, it is still possible to plead scienter by identifying circumstances indicating conscious behavior by the defendant, though the strength of the circumstantial allegations must be correspondingly greater."  *Kalnit v.*

---

[8] The Court notes that Plaintiff has also not alleged any reliance on Moscou and Ford's statement that they did not know Wilson.

*Eichler*, 264 F.3d 131, 142 (2d Cir. 2001) (quotation marks and citation omitted).  Plaintiff only

alleges that Defendants have "lied" and "acted intentionally, giving Plaintiff false statement"

which does not satisfy the Rule 9(b) heightened particularity requirement.  *See Shields v.*

*Citytrust Bancorp, Inc*., 25 F.3d 1124, 1129 (2d Cir. 1994) ("[C]onclusory allegations [ ] that

Defendants 'knew but concealed' some things, or 'knew or were reckless in not knowing' other

things [ ] do not satisfy the requirements of Rule 9(b)."); *Living the Dream Films, Inc., v. Aloris*

*Ent., LLC & John Santilli*, No. 20-CV-6982, 2021 WL 4342700, at *6 (S.D.N.Y. Sept. 24, 2021),

*report and recommendation adopted sub nom. Living the Dream Films, Inc. v. Aloris Ent., LLC*,

No. 20-CV-6982, 2021 WL 5822233 (S.D.N.Y. Dec. 7, 2021) (holding that scienter not pled

with particularity where "[plaintiff] allege[d] only that [d]efendants 'had actual knowledge of

materially false and misleading statements,' but provide[d] no additional facts supporting a

strong inference of conscious misbehavior or recklessness").

Because Plaintiff has failed to allege her fraud claim with particularity, the fraud claim

must be dismissed.  *See Diesenhouse v. Soc. Learning & Payments, Inc*., No. 20-CV-7436, 2022

WL 3100562, at *7 (S.D.N.Y. Aug. 3, 2022) (dismissing fraud claim where complaint "does not

allege where and when each of the alleged statements was made to each of the [p]laintiffs, what

was stated to the plaintiffs, or why at the time the statement was made it was false").

### III.  Conclusion

For the foregoing reasons, Defendants' Motion is denied in part and granted in part.

Defendants' Motion is granted with regard to Plaintiff's race discrimination and retaliation,

failure to reasonably accommodate, disability discrimination, breach of contract, and fraud

claims.  Defendants' Motion is denied with regard to Plaintiff's retaliation claim under the ADA

against Mercy.  Because this is the first adjudication of Plaintiff's claims on the merits,

Plaintiff's race discrimination and retaliation, failure to reasonably accommodate, disability discrimination, breach of contract, and fraud claims are dismissed without prejudice.  If Plaintiff wishes to file an amended complaint alleging additional facts and otherwise addressing the deficiencies identified above, Plaintiff must do so within 30 days of the date of this Opinion & Order.  Plaintiff is further advised that the amended complaint will completely replace, not supplement, the instant Complaint.  The amended complaint must therefore contain all of the claims, defendants, and factual allegations that Plaintiff wishes the Court to consider.   If Plaintiff fails to timely file an amended complaint, the claims may be dismissed with prejudice.

The Court will hold a status conference on May 4, 2023, at 11:30 AM.  The Clerk of Court is respectfully directed to terminate the pending Motion.  (Dkt. No. 19.)

SO ORDERED.

Dated:    March 27, 2023
          White Plains, New York

_____
          KENNETH M. KARAS
          United States District Judge

33