UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARIA M. FRECKLETON,

                          Plaintiff,

        v.

MERCY COLLEGE NY, *et al.*,

                          Defendants.

---

No. 22-CV-1985 (KMK)

OPINION AND ORDER

Appearances:

Maria M. Freckleton
Philadelphia, PA
*Pro Se Plaintiff*

Jeffrey S. Kramer, Esq.
Locke Lord LLP
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

Maria Freckleton ("Plaintiff") brings this Action against the Mercy College NY ("Mercy College"), Susan Moscou ("Moscou") and Miriam Ford ("Ford") (collectively, "Defendants"), for discrimination and retaliation on the basis of her race and disability status, fraud, and breach of contract. (*See generally* Compl. (Dkt. No. 1).) Before the Court is the Defendants' Motion for Summary Judgment related to Plaintiff's remaining ADA retaliation claim (the "Motion") pursuant to Federal Rule of Civil Procedure ("Rule") 56. (*See generally* Not. of Mot. for Summary Judgment ("Not. of Mot.") (Dkt. No. 44).)

For the reasons stated herein, the Motion is granted.

I.  Background

A.  Factual Background

The following facts are taken from the Parties' statements pursuant to Local Rule 56.1. (*See* Defendants' 56.1 Statement ("Defs. 56.1") (Dkt. No. 58); Plaintiff's Counter 56.1 ("Pl. 56.1") (Dkt. No. 61).)[1]

In the fall semester of 2017, Plaintiff was enrolled as a nursing student at the College of New Rochelle ("CNR").  (*See* Defs. 56.1 ¶¶ 1–2; Decl. of Jeffery S. Kramer in Supp. of Defs. Mot. for Summ. J. ("Kramer Decl.") Ex. C ("Freckleton Dep.") 12:11–16 (Dkt. No. 46-3).)  She received a C-minus in two courses—Nursing 411 and 413—and her appeal for both grades was denied.  (Defs. 56.1 ¶¶ 2–3; Freckleton Dep. 12:11–14:24.)  Plaintiff again received a C-minus in one of these courses after being given the opportunity to retake it.  (Defs. 56.1 ¶ 5; Freckleton

---

[1]  Plaintiff failed to file a properly responsive Rule 56.1 Statement, despite being provided with appropriate notice of the potential impacts by Defendants, as required by Local Rule 56.2.  (*See* Dkt. Nos. 59, 60.)  For example, Plaintiff's 56.1 statement fails, at myriad points, to support Plaintiff's claims with "citation[s] to evidence that would be admissible." Local Rule 56.1(d).  Where this is the case, the Court may deem the Defendants' facts admitted. *See Al Thani v. Hanke*, No. 20-CV-4765, 2024 WL 4265196, at *2 n.1 (S.D.N.Y. Sept. 23, 2024) (concluding the same where the defendants failed to submit "counterstatements followed by citation to evidence which would be admissible" and collecting cases (internal citations and quotation omitted)).

However, "where a pro se plaintiff fails to submit a proper Rule 56.1 statement in opposition to a summary judgment motion, the Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." *Taylor v. Quayyum*, No. 16-CV-1143, 2023 WL 5293383, at *6 (S.D.N.Y. Aug. 17, 2023) (quoting *Wali v. One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009)).  Here, because Plaintiff has failed to comply with Local Rule 56.1(d), the Court will "conduct its own 'assiduous review of the record.'"  *Id.* (quoting *Keawsri v. Ramen-Ya Inc.*, No. 17-CV-2406, 2021 WL 3540671, at *3 (S.D.N.Y. Aug. 10, 2021)).  "[T]he Court has confirmed that each fact asserted in [Defendants' and Plaintiff's] Rule 56.1 statements that is relied upon in this Opinion and Order is supported by its corresponding citation to the record.  The Court otherwise cites directly to the record."  *Al Thani*, 2024 WL 4265196, at *2 n.1.

Dep. 16:1–2.)  Plaintiff's appeal of this grade was denied.  (Defs. 56.1 ¶ 6; Freckleton Dep. 19:23–20:2.)

In 2019, CNR declared bankruptcy and announced that it would be shutting down its campus.  (*See* Decl. of Kevin Joyce ("Joyce Decl.") ¶ 2 (Dkt. No. 47).)  CNR entered into an agreement with Defendant Mercy College to allow certain CNR students to complete their education at Mercy College.  (*See* Defs. 56.1 ¶ 8; Joyce Decl. ¶ 3; Joyce Decl. Ex. A ("Teachout Agreement") (Dkt. No. 47-1).)  Importantly, this Agreement restricted admission to Mercy College to students in good academic standing—a status which required both that the student maintain a particular GPA, and that the student be in "good standing with the institution."  (*See* Teachout Agreement 3; Joyce Decl. ¶ 4; Kramer Decl. Ex. D ("Joyce Dep.") 16:9–17 (Dkt. No. 46-4).)

Plaintiff was dismissed from CNR in the spring of 2018, following her failure to make a passing grade in Nursing 411,[2] and therefore was not "in good standing" with the institution.

---

[2] Plaintiff maintains that the grade she received in this class was the result of discrimination by her professor, Susan Wilson.  (*See* Freckleton Dep. 17:18–18:23.)  Plaintiff states that Susan Wilson intentionally failed her and/or coerced staff to intentionally fail her at CNR.  (*See* Pl. 56.1 ¶ 5.)  But the record is devoid of evidence supporting this assertion.  Aside from Plaintiff's own statements, the record does not support a finding that Plaintiff's grade in Nursing 411 was the product of Mrs. Wilson's malfeasance, and Plaintiff's own statements, without more, are insufficient to create a genuine dispute of material fact.  *See Hawkins v. New York State Off. of Mental Health,* No. 17-CV-649, 2019 WL 4520801, at *12 (S.D.N.Y. Sept. 19, 2019) (finding that "Plaintiff's own self-serving statements, in her affidavits, memoranda, and deposition are simply insufficient to overcome her burden of proof to survive summary judgment, as they are all self-serving statements uncorroborated by any additional evidence."), *aff'd*, 845 F. App'x 9 (2d Cir. 2021).  More evidence would be required to demonstrate that her grades were manipulated by Susan Wilson.

In any event, even if Plaintiff had adduced sufficient evidence to raise a triable fact as to the reason for her dismissal, it is not clear that this would have an impact on the outcome of her retaliation claim.  It is undisputed the Susan Wilson was Plaintiff's professor at CNR, (*see* Freckleton Dep. 16:1–2), and therefore any discriminatory action she took against Plaintiff took place at CNR.  To the extent Plaintiff alleges that *CNR* dismissed her in the spring of 2018 in

(*See* Joyce Decl. ¶¶ 9, 11; Decl. of Susan Moscou ("Moscou Decl.") Ex. A ("Email Investigating Dismissal") (Dkt. No. 49-1); Pl. 56.1 Ex. 1 ("Freckleton Email") 1–2 (Dkt. No. 61-1).)

Despite the fact that Plaintiff had been dismissed from CNR, she received a welcome email from Mercy College on April 18, 2019. (*See* Pl. Opp. 16.) She was able to apply for financial aid and to sign up for classes. (*See* Pl. Opp. 18, 21–23.) However, around June 13, 2019, Mercy College administrators discovered that over 100 students, including Plaintiff, had been erroneously migrated from CNR to Mercy College's systems, and permitted to enroll even though they did not qualify for the Teachout program. (*See* Defs. 56.1 ¶ 16; Joyce Decl. ¶ 10.) On July 8, 2019, CNR informed Mercy College that Plaintiff had been dismissed from CNR and was not a part of the Teachout program. (*See* Defs. 56.1 ¶ 17; Joyce Decl. Ex. C at 2 (Dkt. No. 47-3).)

On July 11, 2019, Plaintiff emailed the Associate Director at Mercy College's Office of Accessibility, Sara Venezian, to request an accommodation of additional testing time. (*See* Defs. 56.1 ¶ 18; Declaration of Sara Venezian ("Venezian Decl.") ¶¶ 2–5 (Dkt. No. 48); Venezian Decl. Ex. A (Dkt. No. 48-1).) Attached to Plaintiff's email was a note from a Nurse Practitioner, stating, in relevant part: "[p]atient experiences testing anxiety and will benefit from extended

---

retaliation for her complaints about Susan Wilson, it is not clear that Mercy College or its employees could be held liable for those actions. In order for an entity to assume liability under the ADA for another entity's actions, there must be "substantial continuity" between the two entities. *See Crosby v. McDonald's of Guilderland, LLC*, No. 17-CV-1160, 2018 WL 2077884, at *7 (N.D.N.Y. May 2, 2018) ("'For an [entity covered by the ADA] to be considered a successor there must be substantial continuity of identity in the business enterprise before and after a change.'" (quoting *Forde v. Kee Lox Mfg. Co.*, 584 F.2d 4, 5 (2d Cir. 1978)). Here, Plaintiff has adduced no facts suggesting that there was "substantial continuity" between the two entities, and in fact the evidence in the record suggests the opposite. (*See* Teachout Agreement 3 ("Mercy [College's] obligations under this Agreement do not extend to any matters not explicitly covered by this Agreement"); Joyce Dep. 12:3–17 (responding to a question about a "merger" between Mercy College and CNR by stating "it was not a merger of the institutions").)

accommodations to complete her exams." (*See* Defs. 56.1 ¶ 20; Venezian Decl. Ex. B (Dkt. No. 48-2).) Venezian responded on July 12, 2019, requesting that Plaintiff provide additional information regarding the nature of her disability and her functional limitations. (*See* Venezian Decl. Ex. A (Dkt. No. 48-1).) Plaintiff never responded to this request. (*See* Freckleton Dep. 76:7–11 ("Q. So did you or did you not following this e-mail from Ms. Venezian consult with your medical provider about providing more details for your accommodation request? A. I did not. ").)

On August 7, 2019, Defendant Moscou sent an internal email stating that she and Defendant Ford were considering Plaintiff for admission to Mercy College, but acknowledging that Plaintiff had been dismissed from CNR for "multiple failures." (*See* Defs. 56.1 ¶ 29; Email Investigating Dismissal.) On August 8, 2019, Defendants Ford and Moscou sent Plaintiff a letter informing her that her admission had been denied, through either the Teachout program or the regular transfer process. (*See* Moscou Decl. Ex. B ("Denial Letter") (Dkt. No. 49-2).) Defendant Moscou indicated to another Mercy College administrator in an August 9, 2019 email that there could be "a potential legal problem" with a student (Plaintiff), who was not admitted to Mercy College because of the record leading to her dismissal from CNR. (*See* Moscou Decl. Ex. C (Dkt. No. 49-3).)

B. Procedural Background

Plaintiff filed her Complaint on March 3, 2022. (Dkt. No. 1.) Defendants filed a Motion to Dismiss on August 19, 2022. (*See* Dkt. No. 19; Dkt. No. 21.) On March 27, 2023, the Court issued an Opinion and Order dismissing all of Plaintiff's claims except her ADA retaliation claim. (*See* Op. and Order ("2023 Opinion.") (Dkt. No. 28).)

On March 22, 2024, Defendants filed a pre-motion letter in anticipation of the instant Motion. (Dkt. No. 38.) Plaintiff responded, (Dkt. No. 42), and the Court set a briefing schedule, (*see* Dkt.). Pursuant to that schedule, Defendants filed the instant Motion on June 10, 2024. (*See* Not. of Mot.; Mem. of Law in Supp. of Defs.' Mot. ("Defs. Mem.") (Dkt. No. 45); Kramer Decl.; Joyce Decl.; Venezian Decl.; Moscou Decl.; Declaration of Miriam Ford ("Ford Decl.") (Dkt. No. 50).) On December 19, 2024, the Court issued an order requiring both parties to submit statements in compliance with Local Rule 56.1, and Defendants to serve Plaintiff with a Rule 56.2 Notice. (*See* Dkt. No. 57.) Defendants filed their 56.1 and 56.2 submissions on December 31, 2024. (*See* Defs. 56.1; Dkt. Nos. 59, 60.) Plaintiff filed her response 56.1 Statement on January 10, 2025. (*See* Pl. 56.1.)

## II. Discussion

### A. Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (same); *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same). "In deciding whether to award summary judgment, the court must construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Torcivia v. Suffolk County*, 17 F.4th 342, 354 (2d Cir. 2021); *see also Horror Inc. v. Miller*, 15 F.4th 232, 240 (2d Cir. 2021) (same). "It is the movant's burden to show that no genuine factual dispute exists." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Red Pocket, Inc. v. Interactive Commc'ns Int'l, Inc.*, No. 17-CV-5670, 2020 WL 838279, at *4 (S.D.N.Y. Feb. 20, 2020) (same).

"However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim," in which case "the non[-]moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration, citation, and quotation marks omitted).  Further, "[t]o survive a [summary judgment] motion . . . , [a non-movant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; [s]he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . .").

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted).  At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (citation omitted).  Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva*

*Pharms. Tech. Corp. v. Barr Laby's. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quoting *Celotex*, 477 U.S. at 323–24).

When ruling on a motion for summary judgment, a district court should consider only evidence that would be admissible at trial. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits or deposition testimony to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)); *see also Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("Rule 56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge . . . ."); *Baity v. Kralik*, 51 F. Supp. 3d 414, 419 (S.D.N.Y. 2014) (disregarding "statements not based on [the] [p]laintiff's personal knowledge"); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24, 2007) ("The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (citation omitted)).

Finally, the Second Circuit has instructed that when a court considers a motion for summary judgment, "special solicitude" should be afforded a pro se litigant, *see Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016); *see also Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (same), and a court should construe "the submissions of a pro se litigant . . . liberally" and interpret them "to raise the strongest arguments that they suggest," *Janczuk v. United States*, No. 24-CV-3718, 2024 WL 4483225, at *1 (S.D.N.Y. Oct. 7, 2024); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). "Nonetheless, proceeding pro se does not otherwise relieve a litigant of the usual requirements of summary judgment, and a pro se party's

bald assertions unsupported by evidence . . . are insufficient to overcome a motion for summary judgment." *Gunn v. Milani*, No. 20-CV-2681, 2024 WL 4124319, at *7 (S.D.N.Y. Sept. 9, 2024); *see also Flores v. City of New York*, No. 15-CV-2903, 2017 WL 3263147, at *2 (S.D.N.Y. July 31, 2017) (same); *Houston v. Teamsters Local 210, Affiliated Health & Ins. Fund-Vacation Fringe Ben. Fund*, 27 F. Supp. 3d 346, 351 (E.D.N.Y. 2014) (same).

  B. Analysis

  "The *McDonnell Douglas* framework governs retaliation claims under the ADA . . . ." *Owens v. Delta Airlines, Inc.*, No. 23-CV-2114, 2025 WL 278024, at *11 (E.D.N.Y. Jan. 23, 2025); *see also Tafolla v. Heilig*, 80 F.4th 111, 125 (2d Cir. 2023) (applying the McDonnell Douglas framework in an ADA retaliation context). At the summary judgment stage, the analysis is broken into three stages: (1) the prima facie case; (2) the legitimate, non-retaliatory explanation; and (3) the showing of pretext. *See Dodd v. City Univ. of New York*, 489 F. Supp. 3d 219, 246–47 (S.D.N.Y. 2020) (describing this standard).

> The *prima facie* elements of a retaliation claim under the ADA are "(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action."

*Owens*, 2025 WL 278024, at *11 (quoting *Tafolla*, 80 F.4th at 125); *see also Dodd*, 489 F. Supp. 3d at 246–47 (S.D.N.Y. 2020) (applying the same standard).

  If a plaintiff meets the initial burden of establishing a prima facie case, "the burden of production shifts to the defendant, who must 'articulate a legitimate, non-retaliatory reason for the challenged employment decision.'" *Dodd,* 489 F. Supp. 3d at 247 (quoting *Treglia v. Town of Manlius*, 313 F.3d 713, 721 (2d Cir. 2002)); *Widomski v. State Univ. of New York (SUNY) at Orange,* 933 F. Supp. 2d 534, 547, 545–53 (S.D.N.Y. 2013) (articulating and applying the same standard), *aff'd*, 748 F.3d 471 (2d Cir. 2014). "The defendant's burden at this stage is 'one of

production, not persuasion.'" *Dodd*, 489 F. Supp. 3d at 247 (quoting *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142 (2000)).   Finally, if a defendant meets this burden, "then, at the final step of the *McDonnell Douglas* analysis, the presumption of retaliation drops away and 'the plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation.'" *Id.* (quoting *Cifra v. G.E. Co.*, 252 F.3d 205, 216 (2d Cir. 2001)); *see also Widomski*, 933 F.Supp.2d at 550–53 (articulating and applying the same standard).   "At the summary judgment stage, this requires the plaintiff to identify evidence sufficient to allow a rational factfinder to conclude 'that the desire to retaliate,' not the employer's proffered justification, 'was the but-for cause of the challenged employment action.'" *Dodd*, 489 F. Supp. 3d at 247 (quoting *Ya-Chen Chen v. CUNY*, 805 F.3d 59, 70 (2d Cir. 2015)).   "A plaintiff may show but-for causation by 'demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action.'" *Id.* (quoting *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013)).

      1.  <u>Prima Facie Case</u>

         a.  <u>Participation in a Protected Activity</u>

As noted in the 2023 Opinion, making a request for "a reasonable accommodation of a disability is an ADA protected activity." *Freckleton v. Mercy Coll. NY*, No. 22-CV-1985, 2023 WL 2648827, at *11 (S.D.N.Y. Mar. 27, 2023) (quoting *Clark v. Jewish Childcare Ass'n, Inc.*, 96 F. Supp. 3d 237, 262 (S.D.N.Y. 2015); *see also Robles v. Medisys Health Network, Inc.*, No. 19-CV-6651, 2020 WL 3403191, at *11–12 (E.D.N.Y. June 19, 2020) (citing and applying the same standard).   Here, the evidence suggests that Plaintiff made a request for an accommodation for her disability on July 11, 2019, when she emailed Sara Venezian to request

10

additional testing time. (See Defs. 56.1 ¶ 18; Venezian Decl. ¶¶ 2–5; Venezian Decl. Ex. A.)
Therefore, there is no genuine dispute of material fact as to whether this requirement has been
met.

### b.  Defendants' Knowledge

"[I]t is not necessary that particular individuals know of the protected activities at issue to
satisfy the second element of the retaliation analysis." *Seivright v. Montefiore Med. Ctr., Hosp.
of Albert Einstein Coll. of Med.*, No. 11-CV-8934, 2014 WL 896744, at *11 (S.D.N.Y. Mar. 3,
2014) (collecting cases); *see also Wells v. Achievement Network*, No. 18-CV-6588, 2021 WL
810220, at *22 (S.D.N.Y. Mar. 2, 2021) ("[N]either [the Second Circuit] nor any other circuit
has ever held that, to satisfy the knowledge requirement, anything more is necessary than general
corporate knowledge that the plaintiff has engaged in a protected activity." (quoting *Gordon v.
N.Y.C. Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000)).

Here, the record evidence is sufficient for a reasonable fact-finder to conclude that Sara
Venezian was aware that Plaintiff had requested an accommodation. (*See generally* Venezian
Decl. Ex. A; Venezian Dep.) At the time of the incident, Sara Venezian was an officer of Mercy
College. (*See* Venezian Decl. ¶ 1.) This is sufficient to satisfy the knowledge requirement for
the prima facie case. *See Zann Kwan*, 737 F.3d at 844 (holding that the plaintiff had satisfied the
knowledge requirement where a corporate officer was aware of the protected activity); *Chen v.
Triumph Engine Control Sys., Inc*., No. 20-CV-1840, 2023 WL 2712532, at *10 (D. Conn. Mar.
30, 2023) (same).

### c.  Adverse Action

As noted in the 2023 Opinion, denying admission to a student can constitute adverse
action in the retaliation context. *See Freckleton*, 2023 WL 2648827, at *11; *Johnson v. N.Y.

*Univ.*, No. 17-CV-6184, 2018 WL 3966703, at *8 (S.D.N.Y. Aug. 20, 2018) (classifying denial

of application for readmission to college as an adverse action), *report and recommendation

adopted*, 2018 WL 4908108 (S.D.N.Y. Oct. 10, 2018), *aff'd*, 800 F. App'x 18 (2d Cir. 2020);

*Koumantaros v. City Univ. of N.Y.*, No. 03-CV-10170, 2007 WL 840115, at *8 (S.D.N.Y. Mar.

19, 2007) (noting that dismissal from academic program constituted an adverse action).

Here, the record is sufficient to support a finding that Plaintiff was denied admission to

Mercy College via either the Teachout program or through a regular transfer process.  (*See*

Freckleton Dep. 74:12–75:3 (describing receiving the letter telling her that "it wasn't going to

work out" vis a vis her admission); Denial Letter.)  Therefore, Plaintiff satisfies this requirement.

*Freckleton*, 2023 WL 2648827, at *11.

### d.  Causal Connection

As noted in the 2023 Opinion, causation may be inferred through temporal proximity.

*See Freckleton*, 2023 WL 2648827, at *7 ("A plaintiff can demonstrate the causal

connection . . . indirectly, by showing that the protected activity was followed closely by

discriminatory treatment,"); *see also Zann Kwan*, 737 F.3d at 845 (same); *Dodd*, 489 F.Supp.3d

at 247 ("Indirect evidence may consist of temporal proximity or other circumstantial

evidence:").[3]  The Second Circuit "has not drawn a bright line defining, for the purposes of a

prima facie case, the outer limits beyond which a temporal relationship is too attenuated to

establish causation," *Zann Kwan*, 737 F.3d at 845 (citation and quotation marks omitted).

---

[3] Defendants argue that Plaintiff has failed to adduce evidence of "retaliatory animus."
(*See* Defs. Mem. 13.)  However, as noted in the 2023 Opinion as well as the cases cited by the
Defendants in their briefing, the Court can infer causation based on temporal proximity alone.
*See Freckleton*, 2023 WL 2648827, at *7; *Heiden v. New York City Health & Hosps. Corp.*,
No. 20-CV-10288, 2023 WL 171888, at *21 (S.D.N.Y. Jan. 11, 2023) (finding temporal
proximity alone sufficient to give rise to an inference of causation).

However, as noted in the 2023 Opinion: "[g]enerally, to show causation through temporal proximity alone, courts in this Circuit require no more than two months to have passed between a protected activity and an adverse action." *Freckleton*, 2023 WL 2648827, at *11 (citation omitted).

The record is sufficient for a reasonable jury to find that Plaintiff requested the accommodation on July 11, 2019. (*See* Defs. 56.1 ¶ 18; Venezian Decl. ¶¶ 2–5; Venezian Decl. Ex. A.) Furthermore, nothing in the record contradicts the evidence that Plaintiff was told that she would not be admitted to Mercy College on August 8, 2019. (*See* Denial Letter.) A period of under one month is sufficient indirect evidence to support a finding of causation. *See Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 464 (S.D.N.Y. 2023) (noting that temporal proximity was shown where retaliatory action occurred six weeks after the protected activity); *Dodd*, 489 F. Supp. 3d at 249 (determining that an adverse action that occurred within two months of protected activity satisfied the causation requirement for a prima facie showing of retaliation). Therefore, Plaintiff has satisfied the causation requirement and set out a prima facie case of retaliation.

        2.   Legitimate, Non-retaliatory Explanation

As Plaintiff has successfully made out a prima facie claim of retaliation, "the burden shifts to [Defendants] to articulate a legitimate, nonretaliatory reason for their decision." *Treglia,* 313 F.3d at 721; *Sorensen v. Wallingford Bd. of Educ.*, 742 F. Supp. 3d 240, 256 (D. Conn. 2024) (same); *Dodd*, 489 F. Supp. 3d at 267 (same).

Defendants argue that their legitimate, non-retaliatory reason for choosing not to admit Plaintiff was that Plaintiff was in poor standing with CNR. (*See* Defs. Mem. 14–18.) This claim is amply supported by the evidence in the record. Plaintiff testified that she received a C minus

in both nursing 411 and 413 in the fall of 2017.  (*See* Freckleton Dep. 12:17–13:7.)  She testified

that she was told that if she failed either class a second time, she would be dismissed from the

nursing program at CNR, and that after being advised to take only one of the two courses per

semester, she chose to take both.  (*See id.* 15:11–16:3.)  The transcript submitted by Plaintiff

shows that she again received a C-minus in Nursing 411.  (*See* Pl. Opp. 26.)  She appealed her

grade, her appeal was denied, and she was "banned from the school."  (*See id.* 19:3–19:18.)  On

July 8, 2019, Mercy College learned from CNR that Plaintiff had been dismissed from CNR.

(*See* Joyce Decl. ¶¶ 11; Joyce Decl. Ex. C at 2; Moscou Decl. ¶¶ 5–7; Ford Decl. Ex. A (Dkt. No.

50-1).)

This evidence is sufficient "for [a] trier of fact to conclude that [Plaintiff] was [not

admitted] because" of her standing with CNR.  *Reeves,* 530 U.S. at 142; *see also John v.*

*Brooklyn Eye Ctr.*, No. 22-CV-6190, 2025 WL 317515, at *7 (E.D.N.Y. Jan. 28, 2025)

(concluding that "poor performance" was a legitimate, nondiscriminatory reason) (citation

omitted); *Woolf v. Bloomberg L.P.*, No. 16-CV-6953, 2019 WL 1046656, at *16 (S.D.N.Y. Mar.

5, 2019) (determining that the defendant had met its burden at this stage where it had articulated

"specific performance problems that were contemporaneously documented" as the legitimate

reason for its adverse action), *aff'd sub nom. Woolf v. Strada*, 949 F.3d 89 (2d Cir. 2020), *and*

*aff'd sub nom. Woolf v. Strada*, 792 F. App'x 143 (2d Cir. 2020).

      3.  Pre-text

At this stage in the analysis, "the *McDonnell Douglas framework*—with its presumptions

and burdens—disappear[s]."  *Reeves,* 530 U.S. at 142–43 (internal citations and quotations

omitted).  As noted previously, at this stage, Plaintiff must "must point to evidence that would be

sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a

pretext for impermissible retaliation." *Dodd*, 489 F.Supp. 3d 247.  Again, this requires that Plaintiff identify evidence that would permit a rational fact finder to conclude that "the desire to retaliate was the but-for cause of the challenged employment action." *Ya-Chen Chen*, 805 F.3d at 70 (quoting *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 339 (2013)).

Plaintiff has not identified *any* such evidence, (*see generally* Pl. Opp.), and an independent search of the record does reveal any evidence to permit a factfinder to determine that Defendants were motivated by retaliatory animus.  All contemporaneous records provided by Defendants (and in some cases, those provided by Plaintiff) are consistent with Defendants' asserted reason for not admitting Plaintiff: that her poor standing with CNR prevented Defendants from granting her admission.  (*See* Joyce Decl. Ex. C at 2; Venezian Decl. Ex. A; Venezian Decl. Ex. B; Venezian Decl. Ex. C; Ford Decl. Ex. A; Pl. Opp. 26.).  Given this undisputed evidence, the Court finds that Plaintiff has not established that the denial of admission was a pretext for retaliation.  *See Zabar v. New York City Dep't of Educ.*, No. 18-CV-6657, 2024 WL 4289641, at *15 (S.D.N.Y. Sept. 24, 2024) (holding that because the plaintiff could not demonstrate "weaknesses, implausibilities, inconsistencies, or contradictions" in the defendant's proffered reason, the plaintiff could not carry their burden at the pre-text stage); *cf. Zann Kwan*, 737 F.3d at 847 (concluding that the plaintiff had established a triable issue of fact as to pretext where the defendant's explanations were inconsistent). The only fact that suggests retaliatory animus—temporal proximity—is insufficient to carry Plaintiff's burden at the summary judgment stage.  *Wong v. New York*, No. 21-CV-1338, 2024 WL 3936762, at *15 (N.D.N.Y. Aug. 26, 2024) (noting that temporal proximity alone cannot establish causation at the pretext stage); *Vitti v. Macy's Inc.*, No. 14-CV-5108, 2017 WL 6405848, at *9 (S.D.N.Y. Sept. 29, 2017) (rejecting the plaintiff's claim that temporal proximity was sufficient to satisfy her

burden where the defendant had demonstrated a legitimate, non-pretextual reason for her termination), *aff'd*, 758 F. App'x 153 (2d Cir. 2018).  Therefore, Plaintiff's claim of retaliation fails.

III.  <u>Conclusion</u>

For the foregoing reasons, Defendants' Motion is granted.  The Clerk of Court is respectfully directed to terminate the Motion (Dkt. No. 44), enter judgment for Defendants, mail a copy of this Opinion & Order to Plaintiff, and close this case.

SO ORDERED.

Dated:   March 27, 2025.
         White Plains, New York

_____
KENNETH M. KARAS
United States District Judge